**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **CARES COMMUNITY HEALTH,** |
| **Plaintiff,** |
| v. |
| **UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,** *et al.*, |
| **Defendants.** |

Civil Action No. 17-2774 (JEB)

## MEMORANDUM OPINION

Plaintiff Cares Community Health provides a variety of services to people in the Sacramento, California, area regardless of their ability to pay. Cares also operates a pharmacy there that offers prescription drugs under Medicare Part D, and a federal program enables Cares to procure those drugs from manufacturers at a discount. Cares, however, does not necessarily retain the benefit of that discount; rather, at least one insurance company has altered its contract with Cares to reimburse it at a discounted rate. As a result, Cares has now sued the U.S. Department of Health and Human Services and certain officials, contending that the Government has ignored a statutory duty to regulate those contracts in order to require companies to pay Cares the market rate for discounted drugs. Defendants now move to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7). Finding that Cares has standing but has failed to state a claim, the Court will grant the Motion.

1

**I.     Background**

The Court will provide some brief background on the Medicare Part D program and Federally Qualified Health Centers (FQHCs) — of which Cares is an example — before delving into the facts of this particular dispute.

   **A.     Statutory Framework**

Medicare Part D subsidizes prescription drugs for Medicare beneficiaries. See 42 U.S.C. § 1395w-101(a)(1). To administer Part D, the Centers for Medicare and Medicaid Services (CMS) contracts with private entities known as Part D plan "Sponsors." Id. § 1395w-115. The Government contracts only with those Sponsors, and not directly with pharmacies, to deliver Part D benefits. Id. § 1395w-27(a). Sponsors then enter into contracts with pharmacies to reimburse them for providing prescription drugs to Part D beneficiaries. Id. § 1395w-104(b).

FQHCs receive grants from the Government to provide health-care services to communities that HHS has designated "medically underserved." See 42 U.S.C. §§ 254b, 1396d(l)(2)(B); 42 U.S.C. § 1395x(aa)(4)(A)(i). FQHCs can bill CMS for providing Medicare or Medicaid services. Id. §§ 1395k(a)(2)(D)(ii), 1396a(bb)(2). In addition, they may purchase prescription drugs from manufacturers at discounted prices pursuant to the Section 340B program. See 42 U.S.C. § 256b(a)(4)(A).

At issue in this case is a statutory provision governing payment for FQHC services. To summarize, it provides that FQHCs must be paid "not less than" non-FQHC entities for Medicare services. See 42 U.S.C. § 1395w-27(e)(3)(A). CMS has implemented this FQHC payment requirement by promulgating regulations providing that "[t]he contract between the [Sponsor] organization and CMS must specify that . . . [t]he [Sponsor] organization must pay a[n] [FQHC] a similar amount to what it pays other providers for similar services." 42 C.F.R. §

422.527(a). The dispute centers on whether this provision also applies to Part D prescription drugs.

B.      Factual History

Cares is an FQHC located in Sacramento, California, providing "services to all persons within [its] designated medically underserved area . . . regardless of whether those persons can pay for the services they receive." ECF No. 13 (Am. Compl.), ¶¶ 7–8. In 2009, it entered into a Pharmacy Provider Agreement with Part D plan Sponsor Humana Health Plan, Inc. Id., ¶ 34. The Agreement governed Humana's payment to Cares for any "Retail Pharmacy Services" provided to Humana's enrollees and covered all plans Humana offered, including Part D. Id. When, in December 2014, Humana proposed amending the contract to reduce the Part D payment rates for "340B pharmacy services," Cares objected. Id., ¶¶ 37–38. The parties went to arbitration, but the arbitrator concluded that "the ultimate 'legal question [of whether Humana was required to pay Cares under the pay 'not less than' standard] require[d] the reconciliation of conflicting policies' — in other words, an interpretation of federal law had to be made, which was something the Arbitrator found was not arbitratable." Id., ¶ 39.

Cares then filed this suit against HHS, its Secretary, and the CMS Administrator, claiming that they had "unlawfully withheld" agency action in violation of the APA, see 5 U.S.C. § 706(1), because they failed to "carry out [their] mandatory duty to include the [FQHC payment] requirement in contracts" with Part D plan Sponsors. See ECF No. 1 (Complaint), ¶ 58. After Defendants moved to dismiss that Complaint, contending that the § 706(1) claim was deficient because the FQHC payment requirement does not apply to Part D contracts, see ECF No. 9 (Def. First MTD) at 16–18, Cares filed the Amended Complaint. Although the Amended Complaint contains only one count, it appears to assert two distinct but related claims under the

APA — one for unlawfully withheld agency action under § 706(1) and, alternatively, one for arbitrary and capricious agency action under § 706(2)(A). See Am. Compl., ¶¶ 44–50.

Cares seeks an order: (1) declaring that the FQHC payment requirement applies to Part D drugs; (2) declaring "that [D]efendants have failed to exercise their nondiscretionary duty to include the FQHC pay 'not less than' term in the Part D contracts it has entered into with [Sponsors]"; (3) enjoining "[D]efendants from entering into future Part D contracts . . . that do not include" the FQHC payment requirement; and (4) requiring, "[r]egarding existing Part D contracts, . . . [that] [D]efendants . . . take such actions as may be necessary to ensure that the . . . recipients of those contracts provide for payment to FQHCs with which they have contracts at a level and amount that is not less than what they would pay other (non-FQHC) providers for similar services." Id. at 21. Defendants now move to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7). See ECF No. 14 (Def. MTD).

## II.     Legal Standard

In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant [P]laintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted); see also Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1250 (D.C. Cir. 2005). The pleading rules are "not meant to impose a great burden upon a plaintiff," Dura Pharm., Inc.

v. Broudo, 544 U.S. 336, 347 (2005), and it must thus be given every favorable inference that may be drawn from the allegations of fact. Sparrow, 216 F.3d at 1113.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). The Court need not accept as true, then, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted). For a plaintiff to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Under Rule 12(b)(1), Plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear its claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). A court also has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987) (alteration in original)).

As this Court does not reach the Rule 12(b)(7) argument, it need not lay out that standard.

**III.    Analysis**

Defendants seek dismissal of Cares's Amended Complaint on three grounds: first, Plaintiff lacks standing; second, it has not stated a claim for unlawfully withheld agency action or for arbitrary and capricious agency action; and third, it has failed to join necessary parties. The standing requirement is a matter of Article III jurisdiction, and so the Court will begin with that question before moving to the merits. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–101 (1998). Concluding that Cares has standing but has not sufficiently stated a claim, the Court will dismiss the case without addressing the joinder issue.

A. Standing

Not every disagreement merits a lawsuit. Federal courts decide only "cases or controversies," a phrase given meaning by the doctrine of "standing." See Whitmore v. Arkansas, 495 U.S. 149, 154–55 (1990); U.S. Const. art. III. To have standing to bring an action in federal court, the plaintiff must establish that: (1) he has suffered a concrete and particularized injury that is actual or imminent, not conjectural or hypothetical; (2) there is a causal relationship between his injury and the defendant's conduct; and (3) it is likely that a victory in court will redress his injury. Lujan, 504 U.S. at 560–61. The Court considers the first separately and the other two together.

1.    *Injury-in-Fact*

Cares has alleged that it is losing thousands of dollars a day from the non-enforcement of the statutory payment requirement, see Am. Compl., ¶ 41, an economic injury that easily clears the injury-in-fact hurdle. See Clinton v. City of New York, 524 U.S. 417, 432–33 (1998). Cares also elaborates that this particular experience with Humana is illustrative of its larger and ongoing economic quandary. See Am. Compl., ¶ 40. The Government briefly rejoins that Cares

6

lacks standing with respect to any contract to which it is not a party, since injury-in-fact contemplates not injury to third parties but personal injury. See Def. MTD at 17. Defendant is correct that "a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" Kowalski v. Tesmer, 543 U.S. 125, 129 (2004) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)). Plaintiff, however, describes only its own monetary losses. See Am. Compl., ¶¶ 40–42. To the extent the Government's argument here addresses an implication in Cares's pleading that non-parties' injuries ought also to be redressed in this suit, the Court will consider that issue in the following section.

        2.    *Causation and Redressability*

Defendants maintain at greater length that Cares cannot show the existence of the second two requirements here — namely, causation and redressability. In doing so, the Government makes four principal arguments: first, any economic injury is traceable to a third party's conduct, not to the Government's; second, any declaration by the Court that CMS has failed to act on a non-discretionary duty would not redress Cares's economic injury; third, the Court cannot enjoin the Government from entering into future contracts without the payment requirement because Cares has not established the harm will recur; and finally, Cares's injury is not redressable because, to the extent it seeks modification of all contracts between CMS and Part D plan Sponsors, the Court cannot alter contractual obligations of non-parties. See Def. MTD at 11–12 & n.6, 14–16. The Court will address these arguments in order.

As to the first, the Court finds that Cares's injury is sufficiently caused by government action for the purposes of standing. Defendant is correct that the injury Plaintiff alleges — namely, losing several thousand dollars per working day, see Am. Compl., ¶ 41 — is a result of

Humana's decision to modify the contract. The core of the Complaint, nevertheless, is that Humana's modification would be unlawful if CMS had complied with a mandatory duty to require a higher rate. Id., ¶¶ 17, 33, 39. Although it is well established that a heightened showing is necessary when "a plaintiff's asserted injury arises from the [G]overnment's allegedly unlawful regulation (or lack of regulation) of someone else," Lujan, 504 U.S. at 562, that standard has been met here. "[A] party has standing to challenge government action that permits or authorizes third-party conduct that would otherwise be illegal in the absence of the Government's action." Nat'l Wrestling Coaches Ass'n v. Dep't of Educ., 366 F.3d 930, 940 (D.C. Cir. 2004), abrogated on other grounds by Perry Capital LLC v. Mnuchin, 864 F.3d 591 (D.C. Cir. 2017). The converse is also true. In other words, had Defendants taken the action that Cares alleges is legally required, Humana's downward modification of the contract rates would be illegal.

The Government insists that "it is entirely plausible that Humana is paying Cares lower Part D rates not because" CMS failed to require Humana to pay higher rates, "but rather because Humana understands that Part D drugs do not qualify as 'FQHC services' to which the FQHC payment requirement even applies." Def. MTD at 12. This argument holds little water because it presumes the Government's success on the merits where, in evaluating standing, the Court must presume Cares will prevail. See City of Waukesha v. EPA, 320 F.3d 228, 235 (D.C. Cir. 2003). HHS also urges that "the Amended Complaint is devoid of any facts . . . supporting an inference that Humana would change its behavior and pay Cares higher Part D rates if CMS took the . . . action that Cares demands." Def. MTD at 11–12. Yet Plaintiff is entitled to assume Humana would not take "the extraordinary measure of continuing [its] injurious conduct in violation of the law." Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs., 489 F.3d

1267, 1275 (D.C. Cir. 2007) (internal quotations and citation omitted). For the same reason, Defendants' second contention — namely, that an order from the Court finding that CMS had unlawfully failed to act would not redress Cares's economic injury — is unconvincing.

HHS's third argument — *i.e.*, that Cares has not adequately pled future injury to support an injunction as to future contracts — fares little better. As an initial matter, should Cares prevail on its statutory claim and obtain an order declaring CMS has a legal obligation to enforce the payment requirement as to Part D, such an injunction would seem unnecessary. To the extent that Cares's pleading of ongoing injury may be relevant to its ability to get any form of relief, the Court finds its allegations adequate. Plaintiff identifies a quandary, explaining that its "experience with Humana is an apt demonstration of the result of CMS's interpretation that the FQHC payment requirement is not applicable to Part D." Am. Compl., ¶ 40. Given that it follows from the Amended Complaint that Cares will continue to enter into contracts of this type, additional specificity on its part is not required for the Court to conclude that Plaintiff's injury will not cease with the expiry of this particular contract.

The Government's final argument, however, is more persuasive. It contends that the Court does not have the power to "take such actions as may be necessary" to enforce the payment requirement as to existing contracts, as Cares requests. See Def. MTD at 14–15. At the very least, it is not clear to the Court what actions it might take to revise every existing contract, including those binding exclusively non-parties. Cares must demonstrate standing for each form of relief it seeks, see Friends of the Earth, Inc. v. Laidlaw Env'l Servs., 528 U.S. 167, 185 (2000), and it has not done so here.

\*    \*    \*

To sum up, then, Cares has adequately demonstrated the three requirements to support standing for each form of relief it seeks, except as to its requested modification of existing contracts. The Court now turns to the merits.

B. APA Claim

Cares contends that CMS has breached a clear and discrete statutory duty to include the payment requirement and has therefore either unlawfully withheld agency action or, alternatively, acted arbitrarily and capriciously by entering into Part D contracts without the payment requirement. See ECF No. 16 (Pl. Opp.) at 20. Defendants respond that Cares has not identified any non-discretionary duty CMS has breached because the proposition that the FQHC payment requirement must be included in Part D contracts or that the payment requirement applies to Part D drugs is "wrong as a matter of law." Def. MTD at 22. Having examined the statutory scheme, the Court agrees with the Government.

First and foremost, the text of the payment requirement does not contemplate prescription drugs:

> A contract under this section with [a Sponsor] organization shall require the organization to provide, in any written agreement described in section 1395w-23(a)(4) of this title between the organization and a [FQHC], for a level and amount of payment to the [FQHC] for services provided by such health center that is <u>not less than</u> the level and amount of payment that the plan would make for such services if the services had been furnished by a[n] entity providing similar services that was not a [FQHC].

42 U.S.C. § 1395w-27(e)(3)(A) (emphasis added). The provision thus makes clear that an FQHC must be paid "for services provided by such health center . . . not less than the level and amount of payment" that would be rendered for similar services provided by a non-FQHC entity. See 42 U.S.C. § 1395w-27(e)(3)(A). In other words, reimbursement cannot be made at a discounted rate. The statute defines "[FQHC] services" as "preventative primary health

10

services"; "physicians' services and such services and supplies . . . if furnished as an incident to a physician's professional service"; and "services furnished by a physician assistant," nurse practitioner, clinical psychologist, or a clinical social worker and "such services and supplies furnished as an incident to his service." 42 U.S.C. § 1395x(aa)(1)(A)-(C), (3). As "incident to his service," the statute means "services and supplies (including drugs and biologicals which are not usually self-administered by the patient) furnished as an incident to a physician's professional service, of kinds which are commonly furnished in physicians' offices and are commonly either rendered without charge or included in the physicians' bills." Id. § 1395x(s)(2)(A). This definition of services excludes prescription drugs.

Plaintiff rejoins that the definition of services in 42 U.S.C. § 1395x should not be controlling because the payment requirement quoted above from § 1395w does not explicitly refer to "[FQHC] services," but rather to "services provided by [an FQHC]," a different formulation that it believes is broader and more general. See Pl. Opp. at 11–12. Although Plaintiff is correct that the § 1395x definition is specifically of "FQHC services" and that the statute in other places does use that specific phrase rather than the iteration used in the payment requirement, see, e.g., 42 U.S.C. § 1395y(a)(2), the Court concludes that the slight variation in phrasing cannot bear the weight of Plaintiff's argument. The statute does not separately define services; rather, it lists categories of them. See, e.g., 42 U.S.C. § 1395x(b),(h),(m),(s). In other words, there is no more general statutory definition of "services" on which Plaintiff can rely. It is logical, given that structure, to apply the statutory definition of "FQHC services" to the linguistic synonym "services provided by an FQHC."

Cares's strongest argument is based on 42 U.S.C. § 1395w-112(b)(3)(D) — the statutory provision that applies the FQHC payment requirement, along with the other elements of

11

§ 1395w-27(e), to Part D contracts. See Pl. Opp. at 16–17. It elaborates that § 1395w-112(b)(3)(D) modifies some of the § 1395w-27(e) provisions in their application to Part D, but does not modify the payment requirement, indicating the Congress intended the payment requirement to apply to Part D unchanged. Id. The problem for Plaintiff is that § 1395w-112(b) does not alter the statutory definition of services, which excludes Part D drugs. Cares replies that so interpreting the incorporation provision would create a superfluity problem insofar as the incorporation of § 1395w-27(e)(3)(A) to Part D would have no practical effect. Id. at 17. Of course, Plaintiff does not dispute that there are many contractual terms enumerated in § 1395w-27(e) besides the subsection at issue that do apply to Part D. To the extent Cares is correct that the incorporation of the payment-requirement provision specifically would have no effect, however, the possibility of some amount of surplusage is not enough to defeat the plain text of the provision, which limits its applicability only to services. See Marx v. Gen. Revenue Corp., 568 U.S. 371, 385 (2013). "Particular[ly]" here, "where the surplus words consist simply of a numerical cross-reference," it is not appropriate to allow a general rule against surplusage to defeat the clear reading. See Chickasaw Nation v. United States, 534 U.S. 84, 94 (2001).

The Court need not discuss at great length Plaintiff's next argument, which concerns statutory purpose. Cares contends that Congress intended FQHCs, not Plan D Sponsors, to internalize the benefit of discounted prescription drugs. See Pl. Opp at 13. While that argument may be intuitive enough, nowhere does a hook for it appear in the statute. Congress could easily have implemented some provision to ensure that FQHCs retained the discount in the Part D context. That much is clear because Congress did something similar for Part C by providing for a so-called "wrap-around" payment. Medicare must reimburse FQHCs for the services they provide. See 42 U.S.C. § 1395*l*(a)(3)(A). To the extent that FQHCs may be paid less by an

insurance company administering Part C than it would be paid under Parts A and B, HHS pays FQHCs a wrap-around payment to make up the difference. See 42 U.S.C. §§ 1395*l*(a)(3)(B), 1395w-23(a)(4). No similar payment exists for Part D.

To the extent Plaintiff offers a textual basis for its purpose argument, it relies on a different statute: the 340B discounted-prescription-drug program. Cares contends that, as a condition of its participation in the 340B program, it may not transfer to an insurer the benefits it receives, nor may it apply any discounts when collecting fees so as not to subsidize other health-care payors. See Pl. Opp. at 15–16. The provisions on which Cares relies, however, do not sweep so broadly. Participants in the program may not resell the drugs they receive, but the statute does not broadly proscribe transferring a benefit. See 42 U.S.C. § 256b(a)(5)(B). And the latter provision is simply an application criterion for the program. See 42 U.S.C. § 254b(k)(3)(G)(ii)(II). These scattered references in a separate statute are insufficient to salvage Plaintiff's reading of the FQHC payment requirement.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion and dismiss Plaintiff's Complaint for failure to state a claim pursuant to Rule 12(b)(6). A separate Order consistent with this Opinion will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: September 28, 2018